Anthony Argiropoulos, Esq.
Thomas Kane, Esq.
Theodora McCormick, Esq.
Lauren B. Cooper, Esq.
**EPSTEIN BECKER & GREEN, P.C.**
150 College Road West, Suite 301
Princeton, New Jersey 08540
(609) 455-1540

Attorneys for Defendant
Deborah Heart and Lung Center

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CHARLES DENNIS, M.D.,<br><br>        Plaintiff,<br><br>               v.<br><br>DEBORAH HEART AND LUNG CENTER, et al.,<br><br>        Defendant. | CIVIL ACTION NO.: 1:19-CV-10034<br><br>**JOINT DISCOVERY PLAN** |

1. Set forth the name of each attorney appearing, the firm name, address and telephone number and facsimile number of each, designating the party represented.

   **Attorneys for Plaintiff Dr. Charles Dennis:**

   James W. Boyan, III, Esq.
   **PASHMAN STEIN WALDER HAYDEN**
   Court Plaza South
   21 Main Street, Suite 200
   Hackensack, New Jersey 07601
   T: (201) 488-8200
   F: (201) 488-5556

   **Attorneys for Deborah Heart and Lung Center:**

   Anthony Argiropoulos, Esq.
   Thomas Kane, Esq.
   Theodora McCormick, Esq.

Lauren B. Cooper, Esq.
**EPSTEIN BECKER & GREEN, P.C.**
150 College Road West, Suite 301
Princeton, New Jersey 08540
T: (609) 455-1540
F: (609) 228-5318

2. Set forth a brief description of the case, including the causes of action and defenses asserted.

**Plaintiff's Position:**

Dr. Dennis is a former employee of DHLC. In 1993, DHLC began to sponsor an ERISA welfare benefit plan, the Deborah Heart and Lung Center Professional Staff Accumulation Plan (hereinafter, the "Plan"). In February 1994, Dr. Dennis began deferring portion of his salary to the Plan making him a participant of the Plan. Pursuant to the terms of the Plan, a portion of those contributions were used to pay the premiums on a variable life insurance policy with Nationwide Life Insurance Company (the "Nationwide Policy").

In 1994, DHLC required Dr. Dennis to sign two documents purporting to assign it certain rights under the Nationwide Policy (the "Assignments"). The Assignments, one dated March 11, 1994 and the other dated July 21, 1994, both state that "[f]or value received," Dr. Dennis transferred to DHLC the Nationwide Policy, including certain enumerated rights. The Assignments further state that Dr. Dennis incurred certain liabilities to DHLC and/or owed certain obligations to DHLC in connection with premium contributions made by DHLC pursuant to the Plan Document, and that the Assignments were "collateral security" for those liabilities or obligations. Despite those statements, DHLC never made any employer-funded contributions to the Nationwide Life Insurance Policy.

Dr. Dennis fully funded all of the contributions to the Plan. DHLC did not provide any employer-funded contributions to the Nationwide Policy or the Nationwide Investment Account. Nor did DHLC make any loans or advances to Dr. Dennis to pay the premiums for the Nationwide Policy. As a result, Dr. Dennis has never owed any obligations to DHLC nor has he incurred any liabilities to DHLC as a result of the Plan.

Dr. Dennis continued to make contributions to the Plan until he resigned from DHLC in June 2006. In July 2006, Dr. Dennis and DHLC entered into a Separation Agreement and General Release (the "Separation Agreement"). (Id. at ¶ 30). In that agreement, Dr.

Dennis expressly reserved his right to file claims for vested ERISA benefits. (Id. at ¶ 31).

Under the Plan, Dr. Dennis has the right "to borrow policy values . . . in excess of the collaterally assigned interest of the Employer . . ." In February 2018, Dr. Dennis sought to borrow policy values as expressly permitted under the Plan. (Id. at ¶ 34).

On February 9, 2018, Dr. Dennis asked his financial advisor Daniel Roccato to arrange for a loan from the Nationwide Policy. On February 14, 2018, Nationwide Life Insurance Company advised Mr. Roccato that DHLC would need to sign a form releasing the Assignments before Dr. Dennis could take a loan from the Nationwide Policy.

On February 18, 2018, Dr. Dennis made a claim for benefits under the Plan by sending a letter to the Joseph Chirichella, President and CEO of DHLC (the "Claim"). In the Claim, Dr. Dennis requested that DHLC release the Assignments since it had not made any employer-funded contributions to the Nationwide Policy. DHLC never responded to Dr. Dennis's claim for benefits.

On April 16, 2019, Dr. Dennis filed this lawsuit against DHLC and the Plan asserting claims for wrongful denial of benefits under Section 502(a)(1)(B) of ERISA and breach of fiduciary duty under Section 1104 of ERISA.

**Defendant's Position:**

Plaintiff's Complaint is barred under the broad terms of the Separation Agreement and General Release (the "Release") Dr. Dennis entered into in 2006 when leaving his employment at Deborah to work for its competitors, the Cardiology Group, P.A. ("CGPA") and Virtua Health, Inc. ("Virtua"). There are only two exceptions from the broad language of the Release: (1) claims for non-ERISA, vested retirement or pension benefits; and (2) claims for ERISA-governed, vested benefits. Stated another way, in order to escape the language of the Release, the Plan must be vested.

If the Plan is governed by ERISA, it is not and cannot be a vested benefit. The Plan is an exempt welfare benefit that does not vest, and as such, is barred by the Release. ERISA does not provide for the vesting of welfare benefits, and therefore a contractual agreement for the vesting of benefits must be found

3

in the plan document. The Plan document is completely devoid of any vesting language or requirements. Accordingly, Dr. Dennis's Complaint – seeking to access the very Plan he waived any claims to – is barred under the Release.

Moreover, this litigation constitutes a parallel litigation for purposes of the Colorado River doctrine. As such, this Court should abstain from exercising jurisdiction. The Chancery Action, Charles Dennis v. Deborah Heart and Lung Center, Docket No. BUR-C-47-18, is virtually identical to Dr. Dennis's Complaint in this matter. It involves the same parties, the same facts, and seeks the same relief—but casts Dr. Dennis's complaint as based on state law causes of action, rather than as federal ERISA claims as has been alleged in this case. The Chancery Action remains active and the parties are awaiting a decision from the Hon. Paula T. Dow, P.J. Ch. on Deborah's motion for summary judgment based upon the Release and Dr. Dennis's motion for voluntary dismissal.

3. Have settlement discussions taken place? Yes.

   What was plaintiff's last demand?
   Monetary demand: **Counsel fees incurred in connection with this matter.**

   Non-monetary demand: **Release of the Assignments.**

   What was defendant's last offer? **None.**
   Monetary offer: **None.**
   Non-monetary offer: **None.**

4. The parties **have** met pursuant to Fed. R. Civ. P. 26(f).

5. The parties **have** exchanged the information required by Fed. R. Civ. P. 26(a)(1).

6. Explain any problems in connection with completing the disclosures required by Fed. R. Civ. P. 26(a)(1). **None.**

7. The parties completed a year of discovery in the litigation currently pending in the Chancery Division of the Superior Court captioned Charles Dennis v. Deborah Heart and Lung Center, BUR-L-00047-18. The parties intend to exchange written discovery requests prior to the Court's November 1, 2019 initial conference.

8. Proposed joint discovery plan:

4

(a) The parties agree that discovery is needed on the following subjects:

- Whether the Nationwide Plan subject to this litigation is a "vested" benefit under ERISA;

- The administrative remedies sought by Dr. Dennis is attempting to access the Plan;

Defendant also believes that discovery should be conducted on the following subjects.  Plaintiff disagrees

- Whether ERISA governs the Nationwide Plan;

- The alleged fiduciary obligations of Deborah

(b) Discovery **should not** be conducted in phases or be limited to particular issues.

(c) Proposed schedule:

(1) Fed. R. Civ. P. 26 Disclosures: **October 25, 2019 in accordance with the Court's Standing Order**;

(2) Service of Interrogatories, document demands, and third-party subpoenas: **November 1, 2019, 2019.**

(3) Any interrogatories served shall count against the maximum number of 25 interrogatories by each party to the other party; this total shall apply to all discovery in this matter.

(4) Responses to interrogatories, document demands, and third-party subpoenas: **November 25, 2019.**

(5) Fact discovery, including depositions, to be completed by **January 15, 2020.**

(6) Number of depositions to be taken by each party:

**Plaintiff: Plaintiff anticipates no more than 3 depositions, including a 30 (b) (6)**

5

>>**deposition, a representative of MKA and an expert deposition.**
>
>>**Defendant:** Deborah Heart and Lung Center anticipates no more than 5 depositions, including Plaintiff Charles Dennis, Robert Dell'Osa, Esq., any administrators of the Plan with MKA, any ERISA expert required, and/or other individuals with knowledge of the Plan and its vesting requirements.
>
>(7) Disclosure of the identity of the identity of experts and subject matters of their opinions: **January 20, 2020.**
>
>(8) Plaintiff's Expert Reports: **February 5, 2020**
>
>(9) Defendant's Expert Reports: **February 19, 2020**
>
>(10) Expert depositions to be completed by: **March 27, 2020**
>
>(11) Motions to Amend or to Add Parties to be filed by: **November 15, 2019**
>
>(12) Dispositive motions to be served within **30 days** of the completion of discovery.
>
>(d) Set forth any special discovery mechanism or procedure requested, including data preservation orders or protective orders: **None.**
>
>(e) A pretrial conference may take place on **April 8, 2020.**
>
>(f) Trial by jury or non-jury trial? **Non-jury trial.**
>
>(g) Trial Date: _____.

9. Do you anticipate any special discovery needs (<u>i.e.</u>, videotape/telephone depositions, problems with out-of-state witnesses or documents, etc.)? **None. However, see response to No. 12.**

10. Do you anticipate any issues about disclosure or discovery of electronically stored information, including the form or forms in which it should be produced? **No.**

If so, how will electronic discovery or data be disclosed or produced? Describe any agreements reached by the parties regarding same, including costs of discovery, production, related software, licensing agreements, etc. **N/A.**

11. Do you anticipate the entry of a Discovery Confidentiality Order? <u>See</u> L. Civ. R. 5.3(b) and Appendix S. **Yes. A discovery confidentiality order was entered in the Superior Court matter and we anticipate one will be required this action, in light of the confidential financial information related to the Plan, including non-party participants in the Plan.**

12. Do you anticipate any discovery problem(s) not listed above? Describe.

    **Plaintiff's Position:** Defendant's "position" set forth below is not an anticipated discovery problem. It is Defendant's attempt to relitigate discovery issues that arose in other litigations between the parties. Plaintiff submits that the Joint Discovery Plan is not the proper forum to argue the merits of those disputes which have already been resolved. Discovery has been closed in both of those cases for a long period of time and this Court will determine the proper scope of discovery in this case. Nevertheless, since Defendant insists upon arguing about those issues Plaintiff provides the following response.

    Defendant has misrepresented Judge Dow's ruling in the Chancery action. Contrary to Defendant's representation, Judge Dow did not order Plaintiff to produce complete copies of his tax returns. Instead, she ordered him to "disclose only that portion of his tax returns containing the amount of income deferred for taxes each year" from 1994 to 2006 and produce that information "for attorney's eye's only." Plaintiff fully complied with that order by disclosing the approximate amounts of taxes that he deferred each year and stating that he did not possess copies of his tax returns for the years in question. Defendant allowed discovery in the Chancery Action to close without making any further attempt to obtain information relating to Plaintiff's taxes.

    In addition, the reason why Defendant sought Plaintiff's tax information is now moot. Defendant sought that information to show that the plan at issue was a welfare benefit plan and was not a pension plan. That is no

7

longer an issue in the case because the Plan Document states and Plaintiff concedes that the Plan is an ERISA welfare benefit plan.

Defendant also misrepresents that Dr. Dennis failed to disclose certain information to counsel prior to filing the Chancery Action. Defendant has no knowledge or information about what Plaintiff discussed with counsel prior to filing the lawsuit so it has no factual basis for making such a statement. Defendant also has no factual basis for stating that Plaintiff only made a "perfunctory review" of his personal files for his tax returns.

Finally, with regard to the Split Dollar Agreement/Plan Instrument, Plaintiff did not believe that he had a copy of the document in his possession and testified to that fact. When he later discovered the document, he immediately produced it to Defendant. In contrast, Defendant failed to maintain a copy of the Split Dollar Agreement/Plan Instrument despite the fact that it was the Plan Sponsor and named fiduciary of the Plan and had an obligation to maintain documents relating to the Plan.

Plaintiff has fully complied with all of his discovery obligations and there is no legal of factual basis to obtain an independent firm to search his records.

**Defendant's Position:** In the Chancery Action, Judge Dow ordered that Dr. Dennis produce his tax returns. After a perfunctory review of his personal files, Dr. Dennis indicated that he was not in possession of his tax returns. However, Dr. Dennis could obtain copies of his tax returns by either requesting them from his accountant, or completing a Form 4506 in order to obtain copies directly from the IRS. Deborah did not press this issue in the Chancery Action so as not to delay its motion for summary judgment, however, these documents will be required if this litigation proceeds.

Additionally, Deborah has a ten-year history litigating against Dr. Dennis, who has engaged in a pattern of selectively disclosing what information he provides his attorney. For example, prior to filing the Complaint in the Chancery Action, Dr. Dennis never told his attorney about the Release. Moreover, in

> producing documents responsive to the requests in the Chancery Action, Dr. Dennis produced documents that were responsive to a prior litigation, Deborah Heart and Lung Center v. Virtua Health, Inc., et al., Docket No. MER-L-1865-11 (the "Virtua Unfair Competition Litigation"). Throughout the Virtua Unfair Competition Litigation, Dr. Dennis claimed that these documents were not in his possession. Similarly, in the Chancery Action, Dr. Dennis repeatedly swore under oath that he never entered into a Split Dollar Agreement with Deborah (see Deborah's Motion to Dismiss at pp. 11-14). However, mere days before the close of fact discovery, Dr. Dennis magically "discovered" the very documents he claimed he never signed, and initiated an entirely new federal lawsuit based upon the discovery these documents.
>
> In light of Dr. Dennis's foregoing conduct, Deborah respectfully requests that Dr. Dennis retain an independent firm to search his records and certify that all responsive documents have been produced.

13. State whether this case is appropriate for voluntary arbitration (pursuant to Local Civil 201.1 or otherwise) or mediation (pursuant to Local Civil Rule 301.1 or otherwise). If not, explain why and state whether any such procedure may be appropriate at a later time (i.e., after exchange of pretrial disclosures, after completion of depositions, after disposition or dispositive motions, etc.). **The parties do not believe this case is appropriate for arbitration. Mediation may be appropriate at a later stage in this case.**

14. Is this case appropriate for bifurcation? **No**

15. Any interim status/settlement conference (with clients in attendance), should be held following **the close of expert discovery**.

16. We **do not** consent to the trial being conducted by a Magistrate Judge.

17. Identify any other issues to address at the Rule 16 Scheduling Conference. **None.**

9

<u>/s/ James W. Boyan, III</u>  
James W. Boyan, III  
**PASHMAN STEIN WALDER HAYDEN**  
Court Plaza South  
21 Main Street  
Suite 200  
Hackensack, New Jersey 07601  
T: (201) 488-8200  
F: (201) 488-5556  

<u>/s/ Anthony Argiropoulos</u>  
Anthony Argiropoulos  
Thomas Kane  
Theodora McCormick  
Lauren B. Cooper  
**EPSTEIN BECKER & GREEN, P.C.**  
150 College Road West  
Suite 301  
Princeton, New Jersey 085401  
T: (609) 455-1540  
F: (609) 228-5318  

Dated: October 25, 2019